## STATE OF HAWAII, Plaintiff-Appellant, *v.* JOHN BASILIO PUAALOHA ENGLISH, Defendant-Appellee

### NOS. 6210 and 6211

MAY 11, 1979

RICHARDSON, C.J., OGATA and MENOR, JJ.*

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY RICHARDSON, C.J.

The State of Hawaii appeals from an order granting a motion to dismiss the indictments against defendant-appellee, John Basilio Puaaloha English, in Criminal Nos. 48739 and 48740.[1]

In December of 1974, two petitions were filed in the family court alleging that on the ninth and nineteenth days of November 1974 appellee engaged in conduct which, if committed by an adult, would constitute two separate offenses of burglary in the second degree in violation of HRS § 708-811 (1976).[2] At the time of these alleged offenses, appellee was sixteen years of age and a resident at the Hawaii Youth Correctional Facility.[3]

On December 27, 1974, the prosecution filed a petition in the family court requesting that the court waive its exclusive

---

[1] In No. 6210, the State appeals from the dismissal of the indictment in Criminal No. 48739 (two counts of burglary in the second degree) and in No. 6211 it appeals from the dismissal of the indictment in Criminal No. 48740 (robbery in the first degree).

By agreement of the parties, the cases have been consolidated for purposes of appeal since they involve common questions of fact and law.

[2] With respect to juveniles who are alleged to have violated the law, the adjudicative process is triggered by the filing of a petition in the family court, rather than by indictment or information. HRS § 571-21 (1976).

[3] Prior to the alleged burglary offenses, appellee was already in the custody of the Hawaii Youth Correctional Facility, presumably, for a previous offense. From the record, it is impossible to conclusively determine whether the alleged burglaries and the subsequent robbery were committed while appellee was on furlough or during periods of escape.

jurisdiction over appellee, pursuant to HRS § 571-22 (1976), and order that he be held for further criminal proceedings in the circuit court. A hearing on this petition was held on February 27, 1975, wherein a committee appointed to study and investigate the appropriateness of waiving jurisdiction reported its findings.[4] After taking the petition under advisement, the family court issued an interim order (filed February 28, 1975) directing

> that a coordinated treatment plan be developed by personnel of the Hawaii Youth Correctional Facility, Division of Vocational Rehabilitation, Olomana School, Family Court, and the Courts and Corrections Mental Health Team assigned to the Hawaii Youth Correctional Facility *which shall assume the possibility that the Court may deny the petition for waiver.* (Emphasis added).

In another petition filed in family court on May 12, 1975, appellee was alleged to have committed an act which, if charged against an adult, would have constituted the offense of robbery in the first degree in violation of HRS § 708-840 (1976). On the date of the alleged robbery, March 23, 1975, appellee was seventeen years of age.

On May 14, 1975, the prosecution again petitioned the family court to waive its jurisdiction over appellee; this time with respect to appellee's alleged robbery offense. From the record, there is no indication that a hearing on this petition was ever held. Nevertheless, on January 7, 1976, the family court issued an order waiving its jurisdiction over appellee and directing that he be held for criminal proceedings in the circuit court to face the robbery charge. This order expressly referred to the prosecution's petition for waiver of jurisdiction as to the burglary offenses and the hearing held thereon, and also noted the court's consideration of "the course and results of treatment afforded said minor in accordance with its interim order after the hearing." Thereafter, on January 16,

---

[4] The findings of the committee appointed by the family court to study and investigate the propriety of waiving appellee was not made part of the record on appeal.

1976, the family court amended its waiver order so as to include the two alleged burglary offenses.

On February 4, 1976, an Oahu grand jury returned two indictments against appellee: one charging him with two counts of burglary in the second degree (Criminal No. 48739) and the other charging him with robbery in the first degree (Criminal No. 48740). Subsequently, appellee moved to dismiss both indictments alleging, *inter alia,* that the delay by the government in prosecuting the charges against appellee was unreasonable and prejudicial, and thereby denied him of his rights to due process of law and to a speedy trial. After a hearing on this motion, the trial court dismissed both indictments for lack of speedy trial. This appeal followed.

This appeal raises the question of whether the family court's delay in waiving its jurisdiction over appellee denied him of his right to due process of law or violated his right to a speedy trial. The State contends that, although a juvenile is entitled to due process of law, the right to a speedy trial does not apply to juvenile proceedings. Further, it asserts that neither of these rights, even if applicable, was violated by the pre-waiver delay. Appellee, on the other hand, argues that the trial court properly held that he was denied of his right to a speedy trial, and that the trial court's dismissal of the indictments against him can be sustained on other grounds, including the violation of his right to due process and Rule 48(b) of the Hawaii Rules of Criminal Procedure.

*No. 6210*

I.

The right to a speedy trial in a criminal prosecution is a fundamental guarantee provided for by both the United States and the Hawaii Constitutions.[5] This right, however,

---

[5] Article I, Section 11 of the Hawaii Constitution and the Sixth Amendment to the United States Constitution identically provide in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

has no application until the putative defendant becomes an "accused." *United States v. Marion*, 404 U.S. 307 (1971); *State v. Almeida*, 54 Haw. 443, 509 P.2d 549 (1973). Whatever prosecutorial delay that may occur prior to one becoming an "accused" must be challenged, if at all, on due process ground. *United States v. Marion, supra* at 324-26; *State v. Bryson*, 53 Haw. 652, 500 P.2d 1171 (1972). *See also State v. Almeida, supra* at 556 n.2, 509 P.2d at 551 n.2.

In the instant case, appellee asserts that he became an "accused" for speedy trial purposes once the prosecution filed its petition in family court requesting that it waive its exclusive jurisdiction over him. Accordingly, he urges this court to utilize the standards set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), in scrutinizing the delay alleged herein.[6] *See State v. Almeida, supra.*

A putative defendant does not become an "accused" so as to invoke his Sixth Amendment right to a speedy trial until either formal indictment or information has been filed against him or else he has become subject to actual restraints imposed by arrest and holding to answer a criminal charge. *United States v. Marion, supra.* This court has adopted the same interpretation with respect to our own constitution. *State v. Bryson*, 53 Haw. at 655, 500 P.2d at 1173. Although in the case before us we are precluded from making a simple application of the above principle,[7] we believe appellee

---

[6] In Barker v. Wingo, *supra*, the United States Supreme Court announced that the resolution of an accused's Sixth Amendment speedy trial claim requires a balancing of four distinct factors: the length of delay, the reason for the delay, the defendant's assertion of his right to a speedy trial and the prejudice accruing to the defendant as a result of the delay. 407 U.S. at 530. Further, it stated that none of these four factors is to be regarded "as either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial," but rather, "they are related factors and must be considered together with such other circumstances as may be relevant." 407 U.S. at 533, *also cited in* Moore v. Arizona, 414 U.S. 25, 26 (1973). *Accord*, State v. Smith, 59 Haw. 456, 468, 583 P.2d 337, 345.

[7] The ascertainment of when appellee became an "accused" is not an easy task due to the particular facts of this case. First of all, at the times the alleged offenses were committed, appellee was a juvenile. Neither this court nor the United States Supreme Court has extended the right to speedy trial to juvenile proceedings. Secondly, even before appellee allegedly committed the first offense, he was already

became an "accused" upon being waived by the family court. Thus, the family court's delay in waiving its jurisdiction over appellee must be characterized as *pre*-accusatory and we will examine it against his constitutional right to due process of law. *See Marion, supra; Bryson, supra.*

The United States Supreme Court has stated that, although "the applicable statute of limitations is the primary guarantee against bringing overly stale criminal charges," *United States v. Marion, supra* at 322, *quoting United States v. Ewell*, 383 U.S. 116, 122 (1966), it "does not fully define the [defendant's] rights with respect to the events occurring prior to indictment" and "that the Due Process Clause has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Accordingly, in its decision in *Marion*, the Court suggested that the Due Process Clause would require dismissal of an indictment where it was shown that the pre-accusatory delay resulted in substantial prejudice to the defendant's right to a fair trial and that the delay "was an intentional device to gain tactical advantage over the accused." 404 U.S. at 324 (footnote and citation omitted).[8]

---

committed to the custody of the Hawaii Youth Correctional Facility for the remainder of his minority. *See* note 3, *supra*. Thus, it is impossible to discern whether his detention subsequent to the alleged crimes was pursuant to his prior commitment or whether it constituted a restraint on his liberty imposed by arrest and holding to answer a criminal charge.

[8] After the Supreme Court's decision in *Marion*, some courts have held that a defendant *must* establish that the alleged delay both caused actual prejudice *and* was an intentional device on the part of the prosecution to gain tactical advantage before a criminal charge can be dismissed on due process ground. *See, e.g.*, United States v. Roberts, 548 F.2d 665, 668 (6th Cir. 1977), *cert. denied*, 431 U.S. 920; United States v. Bursten, 560 F.2d 779, 786 (7th Cir. 1977); United States v. Duke, 527 F.2d 386, 389 (5th Cir. 1976); State v. Murphy, 99 Idaho 511, 548 P.2d 1236, 1239 n.1 (1978); State v. Royal, 217 Kan. 197, 202, 535 P.2d 413, 417 (1975). As discussed *infra*, we decline to apply the due process clause so rigidly, and follow the balancing approach adopted by a substantial number of courts in other jurisdictions.

Although proof of actual prejudice resulting from a pre-accusation delay is generally a necessary element of a due process claim, this court will also consider the reasons for the delay in determining whether dismissal of the criminal charge is required. *See United States v. Lovasco, supra, State v. Bryson, supra.* We note that this balancing approach has been approved by a substantial number of courts in other jurisdictions. *See, e.g., United States v. Weaver,* 565 F.2d 129 (8th Cir. 1977), *cert. denied,* 434 U.S. 1074 (1978); *Coffey v. State,* Alaska, 585 P.2d 514 (1978); *Scherling v. Superior Court of Santa Clara County,* 22 Cal.3d 493, 149 Cal. Rptr. 597, 585 P.2d 219 (1978); *People v. Dunn,* 49 Ill. App.2d 1002, 7 Ill. Dec. 879, 365 N.E.2d 164 (1977); *State v. Williams,* 264 N.W.2d 779 (Iowa 1978); *State v. Malvo,* La., 375 So. 1084 (1978); *State v. Duran,* 91 N.M. 756, 581 P.2d 19 (1978).

1. PREJUDICE TO DEFENDANT.

At the outset of our due process inquiry, we will first consider what prejudice, if any, accrued to appellee's right to a fair trial as a result of the family court's delay in waiving its jurisdiction over him. Appellee first contends that he suffered substantial prejudice because, after being waived, he was unable to recall crucial events and times essential for proper trial preparation.

During the hearing on appellee's motion to dismiss the indictments against him, both appellee and his prior counsel[9] testified that at no time did they have any discussion concerning appellee's alleged commission of the burglary and robbery offenses, nor did they have reason to take steps to prepare appellee's defense. Further, it was asserted that

---

[9] Deputy Public Defender Che-lun Huang was assigned to represent appellee during the waiver proceedings. He was subsequently replaced by Deputy Public Defender Marie Nakanishi Milks following appellee's waiver by the family court and eventual indictment.

appellee had no recollection of what he was doing on the dates of the alleged offenses and that his trial counsel was unable to obtain information to adequately defend him due to the passage of time. Appellee now attempts to justify the failure to discuss the circumstances of the alleged offenses with his counsel on the grounds that 1) there was no reason to discuss the merits of the criminal allegations prior to the waiver hearing since, under HRS § 571-22, no findings with respect to the alleged offenses were required; and 2) there was no reason to prepare appellee's defense subsequent to the waiver hearing because he and his counsel reasonably believed that he would not be waived by the family court. We find little merit in appellee's argument.

Even though it may not have been absolutely necessary for appellee and his counsel to discuss the facts and circumstances surrounding the alleged offenses and to reduce the same to writing prior to the waiver hearing, we feel that it was certainly advisable to do so. Moreover, even if it was reasonable for appellee and his counsel to assume that he would not be waived by the family court, they should have anticipated the eventual adjudication and disposition of the burglary petitions pursuant to HRS § 571-41 (1976). Under these circumstances, we do not believe that appellee's bald assertion of his loss of memory is alone sufficient to establish substantial prejudice. *Cf. State v. Bryson*, 53 Haw. at 656-57, 500 P.2d at 1174-75 (evidence of memory loss due to prosecutorial delay held not sufficient to present a picture of such prejudice amounting to a denial of due process).

A little over a month after the hearing on the prosecution's first waiver petition, but while appellee was still under the coordinated treatment plan pursuant to the family court's interim order, the family court authorized the transfer of appellee from the Hawaii Youth Correctional Facility to the Halawa Correctional Facility (Halawa Jail). There he remained for nine months before he was finally waived over by the family court. Appellee contends that this pre-waiver confinement in jail further prejudiced him. We disagree.

Appellee's transfer to jail was initiated by a petition filed by the superintendent of the Hawaii Youth Correctional

Facility, pursuant to HRS § 352-27 (1976),[10] in which he alleged that "the continued detention or custody of said minor at such facility is subversive to the order and discipline of the facility and will be injurious to the inmates of said facility." As the record reveals, this petition was filed after appellee allegedly committed the robbery offense and while he was detained at the Honolulu Police Department, presumably, following his arrest for said robbery. We believe that any prejudice accruing to appellee as a result of his incarceration in jail was not attributable to the family court's delay in issuing its waiver order but, to the contrary, was brought about by appellee's own misconduct.

2. REASONABLENESS OF DELAY.

The record indicates that, following the February 27, 1975 hearing on the prosecution's first waiver petition, numerous attempts were made to place appellee in alternative treatment plans pursuant to the family court's interim order. When it became apparent to the family court that appellee was not amenable to treatment as a juvenile, it decided to waive its jurisdiction over appellee and ordered him to be held for criminal proceedings.

Thereafter, appellee moved to dismiss the indictments against him, and a hearing was held thereon. During the course of this hearing, the trial court seemed to recognize that the delay in indicting the appellee was not attributable to any

---

[10] HRS § 352-27 provides:

Whenever it is found that the continued detention or custody of any inmate of the Hawaii youth correctional facility at the facility is subversive of the order and discipline of the facility or injurious in any way to the other inmates of the facility, it shall be lawful for the judge of the family court, on representation to that effect being made by the director of social services and housing, or his authorized agents, to hear and determine any such case, and if proved to his satisfaction, the judge may, in the place of further detention or custody at the facility, order that such person, if he is of the age of fourteen years or more, be imprisoned at some public jail for any term not exceeding the unexpired residue of the time for which the inmate has been last committed to the facility.

fault on the part of the prosecution, but rather, stemmed from the "beneficent intent" of the family court in trying to seek alternative juvenile treatment plans in which to place appellee. Nevertheless, the trial court discounted the family court's placement efforts as insufficient justification for the delay and primarily concerned itself with the asserted prejudice to appellee.

In this appeal, the State contends that the family court's attempt to place appellee in a treatment program before waiving its jurisdiction over him was adequate justification for the delay. In particular, it argues that, in postponing the waiver of appellee, the family court was serving both the State's interests in public justice and rehabilitation of juveniles and the appellee's interest in remaining within the protective jurisdiction of the family court.

We think the reason cited by the State to justify the delay should be weighed heavily in its favor. First of all, the delay asserted here was not for the purpose of hampering the defense or gaining some tactical advantage over appellee. Nor can it simply be characterized as "neutral," as in cases where a speedy disposition is precluded by some unforeseeable event or unavoidable condition.[11] Indeed, we are of the opinion that the type of delay alleged here was due, in substantial part, to a benefit accruing to appellee. The language of the family court's interim order clearly suggests that appellee would have remained within the jurisdiction of the family

---

[11] In resolving the Sixth Amendment speedy trial claim presented in Barker v. Wingo, *supra*, the United States Supreme Court discussed weighing of the reasonableness of delay as follows:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531 (footnote omitted).

court, provided that he could be placed in a suitable juvenile treatment program. So long as the family court retained jurisdiction over appellee, he could only be exposed to the possibility of an additional one year of commitment in a treatment facility for the commission of the alleged burglaries. HRS §§ 571-13, 571- 48 (1976). On the other hand, once waived by the family court, appellee would have been susceptible to criminal conviction and long-term imprisonment.[12] We have held that one may not complain of adverse effects and prejudice resulting from a delay in the prosecution of a case where such delay was the result of a benefit granted to him. *State v. Smith, supra* at 13-14.

Further justification for the delay in waiving appellee over to the circuit court can be found in the language of the waiver provision itself. Pursuant to HRS § 571-22, the family court can only waive a juvenile when it finds, *inter alia,* that the person "is not treatable in any available institution or facility within the State designed for the care and treatment of children, or that the safety of the community requires that the person continue under judicial restraint for a period extending beyond his minority." Hence, in postponing its waiver order, the family court only seemed to be heeding the statutory preference of keeping the juvenile within its protective jurisdiction.

In conclusion, we do not believe that the action complained of here — requiring appellee to stand trial as an adult after a pre-indictment delay precipitated by the family court's attempt to place him in a suitable juvenile rehabilitation program — contravenes "those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the community's sense of fair play and decency.' " *United States v. Lovasco, supra* at 790 (citations omitted). Not only has appellee failed to demonstrate that he has suffered actual prejudice as a result of the

---

[12] Had appellee been ultimately convicted for the alleged offenses of burglary in the second degree, he could have been sentenced to a term of imprisonment of five years for each offense. HRS §§ 706-660(3), 708-811(2) (1976).

pre-accusation delay, but also, given the particular circumstances of this case, we do not think the delay was unreasonable.[13]

## II.

Appellee asserts that the trial court's dismissal of the burglary indictment can be alternatively sustained on the basis of Rule 48(b) of the Hawaii Rules of Criminal Procedure (1960)[14] which provided:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the circuit court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

This rule has been regarded as a restatement of the inherent power of the court to dismiss a case for want of prosecution and there need not be a deprivation of one's constitutional right to speedy trial before it may be properly invoked. 3 C. Wright, FEDERAL PRACTICE AND PROCEDURE § 814, at 309-10 (1969). The determination of whether there has been an "unnecessary delay" warranting dismissal has been considered a matter within the discretion of the trial court, *see, e.g., Terlikowski v. United States,* 379 F.2d 501, 504 (8th Cir. 1967), *cert. denied,* 389 U.S. 1008; *United States v. Research Foundation,* 155 F. Supp. 650, 656 (S.D. N.Y. 1957), although, in making such a decision, speedy trial factors are

---

[13] Although, in the case at bar, it may have been preferable for the family court to have exhausted all of the treatment alternatives under its coordinated treatment plan *before* holding the waiver hearing, we do not think that the failure to do so was constitutionally objectionable since all of the conditions set forth in HRS § 571-22 were fully complied with.

[14] This rule — subsequently superseded by Rule 48(b) and (c) of the Hawaii Rules of Penal Procedure (1977) — was principally derived from Rule.48(b) of the Federal Rules of Criminal Procedure and, accordingly, we regard interpretations of the latter as highly persuasive in the construction of our own rule. *See* Kalauli v. Lum, 57 Haw. 168, 552 P.2d 355 (1976); Ellis v. Crockett, 51 Haw. 45, 60-61, 451 P.2d 814, 824 (1969).

equally pertinent and applicable. *Hodges v. United States*, 408 F.2d 543, 551 (8th Cir. 1969).

Even if the trial court had ordered the dismissal under Rule 48(b), we think that such action would have amounted to an abuse of discretion given the facts of this case. As discussed earlier, the delay in the instant case was attributable to the attempt on the part of the family court to exhaust all of its treatment alternatives before relinquishing its jurisdiction over appellee. We fail to see how this lapse in time can be characterized as "unnecessary."[15]

Therefore, having found that the delay alleged herein did not violate appellee's right to due process or his right to speedy trial and having found that the trial court's dismissal of the indictment would not be warranted under Rule 48(b), we reverse the order of the trial court in Criminal No. 48739, reinstate the indictment, and remand the case to circuit court for further criminal proceedings.

*No. 6211*

With respect to the family court's waiver of jurisdiction over appellee based on his alleged commission of the robbery offense, the record fails to indicate that any hearing or investigation was ever conducted prior to the issuance of the waiver order as required by HRS § 571-22.[16] Although the original and the amended waiver orders explicitly referred to the hearing held on February 27, 1975, the purpose of that hearing was to consider the prosecution's waiver petition based on appellee's alleged burglary offenses.

The family court's waiver of a juvenile within its exclusive jurisdiction is "a 'critically important' action determining

---

[15] We also note that Rule 48(b) seems only to apply to post-arrest delay. United States v. Revada, 574 F.2d 1047 (10th Cir. 1978). Therefore, even if the delay involved here could be deemed unnecessary, there would be a serious question as to when, if at all, the rule became applicable.

[16] The constitutionality of HRS § 571-22 was recently upheld by this court in State v. Stanley, 60 Haw. 527, 592 P.2d 422 (1979).

vitally important statutory rights of the juvenile." *Kent v. United States*, 383 U.S. 541, 556 (1966), *also cited in In re John Doe I*, 50 Haw. 620, 623, 446 P.2d 564, 567 (1968). In *Kent*, the Supreme Court held that, under the waiver provision of the District of Columbia's Juvenile Court Act,[17] a juvenile was entitled to "a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision" prior to the issuance of a waiver order. 383 U.S. at 557. *Accord, State v. Stanley, supra* at 9-10.

The waiver provision in *Kent* and the waiver provision involved here both authorize the waiver of a juvenile over the age of sixteen who is charged with an offense which, if committed by an adult, would constitute a felony. Further, both provisions permit the court to waive jurisdiction only after a "full investigation." However, in contrast to District of Columbia statute, HRS § 571-22 expressly provides that the family court may enter only after a hearing on the matter has been held. We believe that the failure of the family court to comply with this statutory mandate prior to the issuance of its waiver order as to the robbery offense constituted a denial of due process[18] requiring dismissal of the indictment.[19]

---

[17] D. C. Code § 11-907 (1961).

[18] Again, as in In re Dinson, 58 Haw. 522, 574 P.2d 119 (1978), we find it unnecessary to consider the constitutional dimensions of the standards set forth in *Kent* since, here, the pre-waiver hearing was required by statute.

[19] Although the failure of the family court to hold a hearing before waiving its jurisdiction over appellee was not relied upon by him as a ground for dismissal at the trial level, we exercise our power to notice plain error affecting substantial rights of the accused. *See* State v. McNulty, 60 Haw. 259, 588 P.2d 438(1978), State v. Onishi, 59 Haw. 384, 581 P.2d 763 (1978).

Also in No. 6211, appellee again asserts that the trial court's dismissal can be sustained on speedy trial ground or, in the alternative, on the basis of Rule 48(b) of the Hawaii Rules of Criminal Procedure. Having already resolved these issues in our discussion of No. 6210 and in light of our affirmance based on another ground, we need not again address these contentions.

The dismissal in Criminal No. 48740 is affirmed.

*Arthur Ross*, Deputy Prosecuting Attorney, for Plaintiff-Appellant.

*Marie N. Milks*, Deputy Public Defender, for Defendant-Appellee.