981 P.2d 704

**In the Interest of John DOE, Born on November 23, 1978, Juvenile.**

**No. 17795.**

Intermediate Court of Appeals of Hawai'i.

April 29, 1998.

Certiorari Granted June 4, 1998.

Donald L. Wilkerson, Reno, NV (Jonathan W. Leeds, Honolulu, on the brief), for Juvenile-Appellant.

Patricia A. Loo, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for Plaintiff-Appellee.

BURNS, C.J., ACOBA, and KIRIMITSU, JJ.

Opinion of the Court by BURNS, C.J.

On December 18, 1992, the Honolulu Police Department filed two petitions, each alleging that appellant John Doe (Doe), born on November 23, 1978, committed the offense of

Unauthorized Control of Propelled Vehicle (UCPV), Hawai'i Revised Statutes (HRS) § 708–836 (1993). The family court's December 1, 1993 Findings, Order and Decree and Order Re Motions denied Doe's motion to dismiss both petitions for violation of his alleged right to a speedy trial and Doe's motion to suppress his statements to Detective Mark Weise (Detective Weise) and, based on one of the petitions, decided that Doe was a law violator. It dismissed the other petition with prejudice.

The family court's January 11, 1994 Order Re Motion denied Doe's December 21, 1993 Motion for [Rec]onsideration of Orders Denying Minor's Motions to Suppress and to Dismiss for Violation of Speedy Trial and Adjudging Minor to be a Law Violator (December 21, 1993 M/R).

On February 28, 1994, the family court entered Findings of Fact and Conclusions of Law (FsOF and CsOL).

In this opinion, we discuss (a) the requirements that must be satisfied before the police may question a minor who has been arrested and (b) the right of a minor charged with a law violation to a trial in the family court without unreasonable delay.

In response to Doe's appeal, we affirm the denial of Doe's motion to dismiss on speedy trial grounds, but reverse the denial of Doe's motion to suppress, vacate the family court's adjudication that Doe is a law violator and, in light of the following precedent, remand for further proceedings consistent with this opinion.

[I]n the case of minors alleged to have commit ted an offense that brings them within the purview of HRS § 571–11 prior to reaching eighteen years of age, the court may retain jurisdiction "after the person becomes eighteen for the purpose of holding hearings and/or entering orders of disposition concerning the alleged offenses."

*In re Doe*, 84 Hawai'i 41, 48, 928 P.2d 883, 890 (1996) (citing HRS § 571–13 (1993)).

## BACKGROUND

The facts are not in dispute. In his points on appeal, Doe does not challenge any of the family court's February 28, 1994 FsOF.

On July 26, 1992, at about 6:00 p.m., Peter Spallone (Officer Spallone), a Campus Security Officer at the University of Hawai'i, was on routine patrol of the campus when he saw two minor boys on a white moped, following another minor on a red moped. Spallone observed that Doe was the passenger on the white moped. Spallone stopped the minors because (1) minors are not allowed on mopeds; (2) two persons are not permitted to ride one moped on campus; and (3) the red moped matched the description of a moped reported stolen a few hours earlier. Spallone then noticed that the mopeds were hot-wired. Officers from the Honolulu Police Department were called, and about ten minutes later the three minors were arrested.

Doe, then age 13, was taken to the police station and held in a holding facility. At about 8:00 p.m. Detective Wiese was notified about Doe's case and Doe's mother was called at her work place. Doe's mother did not arrive at the police station until "10:00 o'clock or:10 after 10:00 [p.m.], something like." Detective Wiese interviewed Doe at about 10:30 p.m. pertaining to Doe's arrest for two counts of UCPV. The interview lasted for approximately 10 to 15 minutes. After the interview, Doe was released to the custody of his mother.

On December 18, 1992, the two petitions were filed. Doe failed to appear at the January 15, 1993 hearing and a summons was issued on February 11, 1993. On May 27, 1993, Doe filed a Motion to Suppress Statements (May 27, 1993 M/S). On June 14, 1993, the date scheduled for a hearing on the May 27, 1993 M/S and for the adjudication hearing, the State of Hawai'i (State) was not ready to proceed because its "complaining witness [was] not present." The State's oral motion for continuance was denied, Doe withdrew his May 27, 1993 M/S, and the family court dismissed the two petitions without prejudice.

On July 8, 1993, the two petitions were refiled against Doe. Doe failed to appear at the August 13, 1993 hearing, and a summons was issued on September 13, 1993. On November 8, 1993, Doe filed a Motion to Sup-

press Statement. On November 18, 1993, Doe filed a Motion to Dismiss for Violation of Speedy Trial. At the December 1, 1993 hearing, the court denied both motions, decided that Doe was a law violator, and sentenced him to perform fifty hours of community service work within ninety days. On January 11, 1994, Doe's December 21, 1993 M/R was denied.

## DISCUSSION

### 1.

Doe implicitly challenges the February 28, 1994 Conclusion of Law no. 6[1] and contends that the court erred by refusing to dismiss Doe's petitions based on a violation of his right to a speedy trial. Doe argues that a delay of approximately one year and four months from the time of his being taken into custody until trial (from July 1992 until December 1993) is presumptively prejudicial. Doe asserts that he and his family had "been put through a great amount of anxiety" and that Doe suffered prejudice, since he had "trouble remembering certain instances in this case."

In the family court, the State responded that the mere passage of time and the allegation of loss of memory was insufficient for a showing of unfair prejudice.

In denying Doe's motion, the family court judge stated,

> Looking at the charge and the missing witness reason for delay, balancing that against the only prejudice or only factor argued on behalf of the minor which was that his memory is not as good, the Court is going to come out on the side of the government insofar as this Motion is concerned and deny that Motion.

■■ The right to a speedy trial in a criminal prosecution is a fundamental guarantee provided for by both the United States and the Hawai'i Constitutions.[2] The trial court's determination as to whether the constitutional right to a speedy trial has been violated is a question of law which we review *de novo* under the right/wrong standard. *See State v. Lau,* 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995). This right, however, "has no application until the putative defendant becomes an 'accused.'" *State v. English,* 61 Haw. 12, 16, 594 P.2d 1069, 1072 (1978) (citing *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and *State v. Almeida,* 54 Haw. 443, 509 P.2d 549 (1973)). In *English,* the Hawai'i Supreme Court held that a minor becomes an "accused" for constitutional speedy trial purposes when the family court waives jurisdiction, directing that the minor be held for criminal proceedings in the circuit court. The court further acknowledged that "[n]either this court nor the United States Supreme Court has extended the right to speedy trial to juvenile proceedings." *English,* 61 Haw. at 16 n. 7, 594 P.2d at 1073 n. 7. The State contends that since minors are not afforded the constitutional right to speedy trial, the question is whether Doe was denied his constitutional right to due process of law, and his right to a fair hearing. We agree.

■■ In deciding a due process challenge based on delay in being brought to hearing, we apply the standard articulated in *State v. English,* 61 Haw. 12, 594 P.2d 1069 (1978). Under this standard, we must balance the prejudice to the accused arising out of the delay against the reasonableness of the delay. To require dismissal of a charge, it is necessary that the delay cause "substantial prejudice to [the accused's] rights to a fair [hearing] and that the delay 'was an intentional device to gain tactical advantage over the [accused].'" *Id.* at 17, 594 P.2d at 1073 (quoting *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

In *State v. Carvalho,* 79 Hawai'i 165, 167, 880 P.2d 217, 219–20 (App.1994), this court "follow[ed] the balancing approach adopted by a substantial number of courts in other

---

1. Conclusion of Law No. 6, entered on February 28, 1994, states as follows: "Viewing the relevant factors together, this Minor has not been denied his constitutional right to speedy trial. Therefore, Minor's motion to dismiss case on grounds of speedy trial is denied."

2. Article 1, Section 14 of the Hawai'i Constitution and the Sixth Amendment to the United States Constitution identically provide in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

jurisdictions' by weighing 'substantial prejudice to the defendant's right to a fair trial' against 'the reasons for the delay in determining whether dismissal of the criminal charge is required.'" (Citation omitted.) In *Carvalho*, the court stated that it believed that "the motions court was correct in concluding that Defendant failed to establish that his claimed inability to recollect events . . . amounted to 'substantial prejudice' to his right to a fair trial." *Id.* at 168, 880 P.2d at 220. The court also stated that it is "established in our jurisdiction that a mere claim of loss of memory coupled with a lapse of time does not, of itself, establish prejudice for purposes of a claim of violation of due process[.]" *Id.*

■ Substantial prejudice may be shown by the loss of a witness, exhibit, or other evidence that would have brought a different result had it been present. *State v. Dunphy*, 71 Haw. 537, 797 P.2d 1312 (1990) (destruction of tapes of conversations which would corroborate the defendant's version of events constituted prejudice).

In this appeal, Doe's allegation of prejudice is as follows:

[Doe] has shown prejudice by showing anxiety and loss of memory. Obviously, having been to the brink of trial once before, and having the case dismissed and then a second trial was traumatic. The minor's testimony shows his poor memory. The prejudice and delay in this case were extreme[.]

■ However, Doe's testimony does not show "his poor memory." Doe did not testify at the adjudication hearing. At the hearing on his motion to suppress/motion to dismiss, Doe did state "I forget" on two occasions. Both statements were in response to questions as to whether he was told that his mother was waiting for him. Doe showed no lack of memory as to other details of his arrest. Doe's "bald assertion of his loss of memory is alone insufficient to establish sub-

stantial prejudice." *Cf. State v. Bryson*, 53 Haw. at 656–57, 500 P.2d at 1174–75 (evidence of memory loss due to prosecutorial delay held not sufficient to present a picture of such prejudice amounting to a denial of due process)." *State v. English*, 61 Haw. 12, 19, 594 P.2d 1069, 1074 (1978).

■ Similarly, Doe asserts that he suffered anxiety due to the passage of time, but fails to show how he suffered any prejudice as a result of this. Doe also fails to account for the fact that the delay was in significant part attributable to him.

In light of the above, we conclude that Doe has failed to show that the delay was prejudicial, that his defense was in any way impaired by the passage of time, or that he was denied a fair hearing. Thus, Doe has failed to show that his constitutional right to due process and his right to a fair hearing have been violated. *Cf. State v. Carvalho*, 79 Hawai'i at 170, 880 P.2d at 222 (defendant failed to establish substantial prejudice to his right to a fair trial).

## 2.A.

■ HRS § 571–31 (1993) states in relevant part:

Taking children into custody; release; notice. (a) A child may be taken into custody by any police officer without order of the judge when there are reasonable grounds to believe that a child comes within section 571–11(1)[3] or (2), . . . .

(b) When an officer or other person takes a child into custody the parents, guardian, or legal custodian shall be notified immediately. The child shall be (1) released to the care of the child's parent or other responsible adult; (2) referred or delivered to the court or other designated agency with or without simultaneous release to parent or other responsible adult; or (3) taken directly to a detention facility, if the child's immediate welfare or the

---

**3.** Hawai'i Revised Statute, § 571–11 (1993) states, in relevant part:

§ 571–11 Jurisdiction; children. Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance.

protection of the community requires it, or the child is subject to detention for violation of a court order of probation or protective supervision.

(c) If the person taking the child into custody believes it desirable, the child's parent, guardian, or legal custodian may be required to sign a written promise to take the child to the court or other designated agency at the time arranged, or to the court at the time directed by the court.

(Footnote added.)

Doe contends that HRS § 571–31(b) was violated when his mother was not "notified immediately" and that a "violation of the detention procedure would demand a suppression of the tainted confession."

■ When reviewing the court's decision on a motion to suppress, we consider all the evidence received at the motion to suppress hearing and at the adjudication hearing, and we view the factual disputes in the record in a light favorable to the party that prevailed on the motion to suppress. *State v. Nakachi*, 7 Haw.App. 28, 33 n. 7, 742 P.2d 388, 392 n. 7 (1987).

The approximate timing of the relevant events was as follows:

| | |
|---|---|
| 6:00 p.m. | Officer Spallone observed the violation and called the police. |
| Post–6:00 p.m. Pre–8:00 p.m. | The police arrived, determined that the mopeds were reported stolen, and took Doe into custody. |
| 8:00 p.m. | Doe's case was assigned to Detective Wiese. |
| 8:00 p.m. | The police called Doe's mother at her work place. |
| 10:10 p.m. | Doe's mother arrived at the police station. |
| 10:30 p.m. | Detective Wiese advised Doe of his constitutional rights and then interviewed him for approximately 10 to 15 minutes. |
| Post–10:40 p.m. | Doe was released to the custody of his mother. |

The record does not reveal when Doe arrived at the police station or why the police did not notify Doe's mother until 8:00 p.m. However, the lapse of time between Doe's being taken into custody and the notification of his mother is not presumptively unreasonable. In the absence of any evidence that

the lapse of time was in fact unreasonable and in light of the applicable standard of review, we affirm the family court's decision that the police did not violate HRS § 571–31(b)'s notification requirement.

### 2.B.

■ New Jersey Statutes Annotated § 2A:4A–32(a) states in relevant part that "[u]nder no circumstances shall any juvenile taken into short-term custody under section 12 of this act be held more than 6 hours." In the absence of any specified time limit in the HRS, we conclude that when a child who is taken into custody under HRS § 571–31 is going to be released to the custody of his parent or other responsible adult under HRS § 571–31(b)(1), the release must occur within a reasonable time after the parent/adult arrives at the location of the child.

In Doe's case, when asked about how long she had to wait at the police station before the police released Doe to her custody, Doe's mother testified that "I think maybe a little over [a half hour] because I had to write a paper to sign a name." It may be that she was being required to sign the written promise mentioned in HRS § 571–31(c) as follows:

> If the person taking the child into custody believes it desirable, the child's parent, guardian, or legal custodian may be required to sign a written promise to take the child to the court or other designated agency at the time arranged, or to the court at the time directed by the court.

We conclude that the time between the arrival of Doe's mother at the police station and the transfer of the custody of Doe from the police to her is not presumptively unreasonable. In the absence of any evidence that the wait was in fact unreasonable, we affirm the family court's implicit decision that Doe was released to the custody of his mother within a reasonable time.

### 2.C.

The United States Supreme Court in *In re Gault*, 387 U.S. 1, 55, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), held

> that the constitutional privilege against self-incrimination is applicable in the case

of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.

■ Minors, like adults, may waive their constitutional right to remain silent, provided the waiver is made voluntarily, knowingly, and intelligently. *State v. Green*, 51 Haw. 260, 263, 457 P.2d 505, 507 (1969).

The United States Supreme Court in *Fare v. Michael C.*, 442 U.S. 707, 724–25, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), concluded in relevant part as follows:

Thus, the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. *Miranda v. Arizona*, 384 U.S. [436], at 475–477 [86 S.Ct. 1602, 16 L.Ed.2d 694] [ (1966) ].

This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. See *North Carolina v. Butler*, [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) ].

In *West v. United States*, 399 F.2d 467, 469 (5th Cir.1968), *cert. denied*, 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795 (1969), the court stated the following nine nonexclusive relevant factors:

(1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge ... and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra-judicial statement at a later date.

When Detective Wiese began his recorded custodial interrogation of Doe, he asked for, and Doe gave him, information regarding Doe's age, school attended, grade going to in school (eighth), and the names and address of Doe's parents. Detective Wiese also asked Doe if he had any medical problems, was taking any medication or if he had had any alcohol in the past 24 hours. Then Detective Wiese, using the Honolulu Police Department (HPD) Form 11 (Warning Juveniles Being Interrogated of Their Constitutional Rights), further advised and questioned Doe as follows:

Q All right. Now you were arrested for, uh, what we refer to as UCPV was Unauthorized Control of Propelled Vehicle. Now I wanna talk to you about that, [Doe]. But before I do that, I'm gonna advise you of your rights by using this form. This is [the] juvenile rights form I placed [sic] in front of you now. Now I'm gonna read this

form out loud to you. You read along with me by yourself, silently. When we come to a yes/no answer, just give me your answer to that question yes or no and then put your initials—at that time put your initials in whatever answer you choose.

\* \* \*

Q I'm gonna ask you questions about a UCPV which is Unauthorized Control of a Propelled Vehicle.... Now—but first I wanna inform you of certain rights that you have under our Constitution. Before I ask any questions, you must understand your rights. First, you have a right to remain silent. And this means, [Doe], that you do not have to say anything to me or answer any of my questions about this case. Secondly, anything you say can be used against you in a court of law. Basically it's all on tape. This tape will be played in—at court. It can be played and—and heard by—heard by the judge. Okay? You understand that?

A Yes.

Q All right. Thirdly, you have a right to counsel of your choice or to talk to anyone else you may want to. This means that you may have your parent or guardian or anyone else who might be able to help you be present. Now do you want your parent or guardian here now? Yes or no? Yes or no?

A No.

Q I'm sorry?

A No.

Q All right. Fourthly, you have a right to speak to an attorney and to have him here while I talk to you. Now you should know that [if] you cannot afford a lawyer or attorney, or your parent or guardian cannot afford a lawyer, the court will appoint one for you. Now, [Doe], do you want an attorney here now? Yes or no?

A No.

Q I'm sorry?

A No.

Q If you decide to answer my questions without a lawyer or your parent or guardian being present, you still have the right to stop answering anytime. Do you understand everything I have told you, [Doe]? Yes or no?

A Yes.

Q You wanna tell me what happened? Yes or no?

A Uh huh. Yes.

Q All right. Sign the form for me, please, in script.

Detective Wiese concluded the interview as follows:

Q All right. Now for the record, did I force you to talk to me, [Doe]?

A No.

Q Did I promise you anything if you talk to me?

A No.

Q Did I threaten you in any way—

A No.

Q —if you talk to me?

A No.

Q All right. So this—this statement is a—is a statement that you gave without being—

A Yes.

Q —forced?

A Yes.

### 2.D.

■ Doe's mother arrived at the police station at approximately 10:10 p.m. At about 10:30 p.m., (a) before Doe was informed that his mother had arrived and was afforded the opportunity to speak to her, (b) Detective Wiese interrogated Doe and Doe waived his constitutional rights. Doe contends that (a) voids (b).

In Rhode Island,

the absence of a parent, a guardian, or an interested adult at the time of waiver does not, alone, render the waiver constitutionally infirm inasmuch as a juvenile has no constitutional right to have an adult present at an interrogation. Therefore, in the absence of a statutorily imposed affirmative duty on police officials to locate a

parent, guardian, or interested adult prior to advising a juvenile in custody of his or her rights and taking a statement from that juvenile, the police are under no obligation to do so. We decline defendant's invitation to impose such an obligation judicially and adhere to the view that, in the context of juvenile waivers, "[w]e are not prepared to place further requirements upon police officers beyond those suggested by the Supreme Court of the United States [in *Fare* ]."

*State v. Lambert,* 705 A.2d 957, 960 (R.I. 1997) (citations omitted).

In Illinois,

> The presence or absence of a parent is a factor to consider when determining the voluntariness of a confession; however, there is no *per se* rule that a parent or guardian be present. However, if parents, guardians, or concerned adults indicate an interest by their presence, then they should be allowed to confer with that child *before* any questioning occurs.

> \* \* \*

> We believe that the police read too much into respondent's statement. Simply because respondent said it was none of his parents' business does not necessarily mean he did not wish to consult with them.... Further, the State's interpretation blatantly disregards the interest of the parents in wishing to confer with their child before questioning.... [W]e hold that when a juvenile's parents are present, request to confer with their child, and are effectively refused by the law enforcement authorities, the presumption arises that the juvenile's will is overborne.

*In re J.J.C.,* 294 Ill.App.3d 227, 228 Ill.Dec. 751, 689 N.E.2d 1172, 1178, 1180 (1998).

In Colorado, a statute bars the admission of any statements made by a child during a police interrogation unless the child's parents, guardian, legal custodian, or attorney are present when the statements are made. *People v. Raibon,* 843 P.2d 46, 50 (Colo.App. 1992).

In Pennsylvania,

> the administering of Miranda warnings to a juvenile, without providing an opportuni-

ty to that juvenile to consult with a mature, informed individual concerned primarily with the interest of the juvenile [is] inadequate to offset the disadvantage occasioned by his youth.

*Commonwealth v. Henderson,* 496 Pa. 349, 351–52, 437 A.2d 387, 388 (1981) (internal quotation marks omitted, citation omitted).

In Massachusetts,

> for the Commonwealth successfully to demonstrate a knowing and intelligent waiver by a juvenile, in most cases it should show that a parent or an interested adult was present, understood the warnings, and had the opportunity to explain his rights to the juvenile so that the juvenile understands the significance of waiver of these rights. For the purpose of obtaining the waiver, in the case of juveniles who are under the age of fourteen, we conclude that no waiver can be effective without this added protection.

*Commonwealth v. A Juvenile (NO. 1).,* 389 Mass. 128, 134, 449 N.E.2d 654, 657 (1983). The Massachusetts court also stated that in the case of a juvenile over the age of fourteen, when there was no meaningful consultation with a parent, interested adult, or an attorney, for the waiver to be valid "the circumstances should demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile." *Id.*

In New York, § 305.2 *McKinney's Consolidated Laws of New York Annotated Book 29A—Part 1* states in relevant part as follows:

> 3. If an officer takes such child into custody ..., he shall immediately notify the parent or other person legally responsible for the child's care, or if such legally responsible person is unavailable the person with whom the child resides, that the child has been taken into custody.

> \* \* \*

> 7. A child shall not be questioned pursuant to this section unless he and a person required to be notified pursuant to subdivision three if present, have been advised:

(a) of the child's right to remain silent;

(b) that the statements made by the child may be used in a court of law;

(c) of the child's right to have an attorney present at such questioning; and

(d) of the child's right to have an attorney provided for him without charge if he is indigent.

8. In determining the suitability of questioning and determining the reasonable period of time for questioning such a child, the child's age, the presence or absence of his parents or other persons legally responsible for his care and notification pursuant to subdivision three shall be included among relevant considerations.

The Practice Commentary to the above New York statute states in relevant part that "[t]hese subdivisions reflect the legislative concern that a parent or other responsible person be notified and afforded an opportunity to be present when a child is questioned, detained or taken to court."

The United States Constitution, *Fare v. Michael C., supra, Rone v. Wyrick*, 764 F.2d 532 (8th Cir.1985), does not require the Colorado, Pennsylvania, Massachusetts, or New York rule to be applied. The question is whether HRS § 571–31(b) does.

The source of HRS § 571–31(b)'s requirement that "[w]hen an officer or other person takes a child into custody the parents, ... shall be notified immediately" is Article IV, § 16 of the 1959 Standard Family Court Act prepared by the Committee on the Standard Family Court Act of the National Council on Crime and Delinquency in cooperation with the National Council of Juvenile Court Judges and the U.S. Children's Bureau.[4] The commentary on § 16 includes the following quote:

"Whenever possible and especially in the case of young children, no child should be interviewed except in the presence of his parents or guardian. This should always be the policy when a child is being questioned about his participation or when a formal statement concerning the child's participation in the alleged delinquent act

is being taken. The presence of a parent during the interview may be helpful to the police as the parental attitudes shown under such circumstances may help the police decide whether the case should be referred to court or to another agency. This procedure, of course, would not apply when the matter being investigated involves the child's parents. In cases where the child has freely admitted his participation in the act to the police, there appears to be nothing improper about interviewing the child to secure background information of a social nature without the parents being present. It may be equally necessary to interview the parents without the child being present to secure social information for the purpose of making a referral." (*Standards for Specialized Courts Dealing with Children*, U.S. Children's Bureau Publication No. 346, 1954.)

However, many jurisdictions, including some who have the same or a similar notification requirement as specified in HRS § 571–31(b), conclude that the totality of the circumstances approach that considers all relevant factors, including the nine relevant factors stated in *West v. United States, supra*, applies in all juvenile cases. *See*, e.g. *Gilliam v. State*, 268 Ga. 690, 492 S.E.2d 185 (1997); *In re Watson*, 47 Ohio St.3d 86, 548 N.E.2d 210 (1989), *cert. denied*, 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990); *In re Joshua David C.*, 116 Md.App. 580, 698 A.2d 1155 (1997); *Grogg v. Commonwealth*, 6 Va. App. 598, 613, 371 S.E.2d 549, 557 (1988).

If the legislature intended to mandate the "presence of parents or guardian" during custodial interrogations of minors by the police, it could have expressly so stated in the statute. On the other hand, one of the logical purposes for the HRS § 571–31(b) requirement that "the parents, guardian, or legal custodian shall be notified immediately" is that he/she/they will have the opportunity to talk to the child before the child is subjected to any custodial interrogation and/or to be present during any custodial interrogation of the child. As specified in the HRS, parents have special rights and liabilities with respect

---

4. According to our research, the last time anything was done with respect to the 1959 Standard Family Court Act was a third printing in 1965.

to their minor children. For example, HRS § 577–3 (1993) states that "[t]he father and mother of an unmarried minor child are jointly the natural guardians of the child's person and property.... The father and mother of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children[.]" HRS § 577–6 (1993) states that "[a]ll children during their minority shall obey the lawful commands of their parents[.]"

Dealing with the specific facts of Doe's case, the custodial interrogation of 13–year-old Doe by the police did not commence until approximately 20 minutes after Doe's mother arrived at the police station. The police did not inform Doe that his mother had arrived. The interrogation lasted for approximately 10 to 15 minutes. After the interrogation, Doe was released to the custody of his mother.

▮ We conclude as a matter of statutory interpretation that when a police officer takes a child into custody pursuant to HRS § 571–31(a), the child's parents, guardian, or legal custodian shall be notified immediately pursuant to HRS § 571–31(b), and the child shall not be subjected to custodial interrogation until the child's parents, guardian, or legal custodian is/are notified of the plans for, and has/have been allowed a reasonable opportunity to communicate with the child prior to and to be present at, the custodial interrogation of the child. If the parents, guardian, or legal custodian decline to, or fail to, respond to that reasonable opportunity, the custodial interrogation may proceed without him/her/them subject to the requirements of *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), and *State v. Green,* 51 Haw. 260, 457 P.2d 505 (1969), and other relevant precedent.

### 3.

Doe contends that the "trial court erred by refusing to suppress Doe's statement when the totality of the circumstances indicates it was not voluntary." Doe alleges that "[b]ased on the circumstances in this interrogation, [Doe] had his will subjugated by the techniques used by the police." Our decision in part 4 above causes this issue to be moot. Therefore, we will not decide it.

### CONCLUSION

Accordingly, with respect to the family court's December 1, 1993 Findings, Order and Decree, we reverse the part that denies John Doe's November 8, 1993 Motion to Suppress Statements, vacate the part that adjudicates Doe as a law violator, and affirm in all other respects. We remand for further proceedings consistent with this opinion.