No. 2--96--1492

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, ) No. 96--CF--2557

)

)

)

JAMES S. BROWN, ) Honorable

) Raymond J. McKoski,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, James S. Brown, was charged by indictment with two counts of first degree murder (720 ILCS 5/9--1(a)(2), (a)(3) (West 1996)) and two counts of aggravated arson (720 ILCS 5/20--

1.1(a)(1), (a)(2) (West 1996)).  Defendant was transferred from juvenile court to the criminal court system for prosecution.  The cause proceeded to trial where a jury found defendant guilty of the lesser included offenses of involuntary manslaughter (720 ILCS 5/9-

-3 (West 1996)) and reckless conduct (720 ILCS 5/12--5 (West 1996)).  The trial court entered its judgment of conviction and imposed a sentence of four years' imprisonment in the Juvenile Department of Corrections.  The trial court denied defendant's posttrial motion, and defendant timely appeals.  

On appeal, defendant asserts that (1) his confession was involuntary; (2) his transfer from juvenile court to the criminal 

court was an abuse of discretion; and (3) the trial court erred in  denying his motion to transfer him back to juvenile court for sentencing purposes.  We affirm in part, vacate in part, and remand.

In September 1996 a hearing was conducted to determine whether defendant, who was approximately 14 years, 11 months old at the time of the offense, should be tried as an adult.  See 705 ILCS 405/5--4(3) (West 1996) (pertaining to discretionary transfers).  The trial court heard the testimony of several witnesses, including juvenile detective Brian Hanna, who interviewed defendant concerning the fire.  Defendant told Hanna that he and Anthony Robinson were out walking and spotted a gasoline can.  They picked it up, and Robinson retrieved some matches.  Robinson suggested that they set garbage cans on fire.  Defendant accompanied Robinson, whereupon they found a garbage can near a residence.  Robinson poured gasoline in it and started a fire; they both then ran.  Two additional garbage can fires were set.  The record reflects that defendant was unaware that an infant had perished in a residential fire as a result of one of the fires.

Dr. Steve Peters, a clinical psychologist and director of adolescent psychology at St. Therese Hospital, performed a psychological evaluation of defendant.  Dr. Peters opined that defendant would be appropriate for a residential treatment program that St. Therese recently developed.  He described defendant as open and reasonably cooperative toward treatment.  

Robert Schroeder, a probation officer, testified regarding placements for minors involved in arson-type offenses.  Schroeder believed that defendant's behavior and his adjustment to the situation has progressively improved.  He also believed that defendant was amenable to treatment, but also a significant risk to the community.  He noted that defendant had no prior criminal background, with the sole exception of a branch court referral for theft.  He recommended that defendant remain within the juvenile court system.

James Fuller, senior juvenile counselor at the Hulse Juvenile Center, testified that he has observed a positive change in defendant since his detention.  George Saxton, a family and individual therapist with the juvenile court system, testified that defendant was amenable to treatment.

After hearing closing arguments, the juvenile court discussed defendant's flight from the scene of the fires; his accountability for the alleged offenses; his failure to warn any parties regarding the fires; and the failure to report the incident.  The court concluded that sufficient evidence existed upon which a grand jury may be expected to return an indictment.  The court also considered the statutory factors, determined that defendant's case should be treated in adult court, and ordered it transferred.

Defendant subsequently filed a motion to suppress his confession.  At the hearing conducted on this motion, Detective Hanna testified that, on July 1, 1996, he went to defendant's home and spoke with his mother, Clotel Clark.  Hanna told Clark that he needed to speak with defendant regarding some garbage cans fires that were started earlier that morning.  Defendant came to the door and Hanna informed them both of his desire to speak with defendant regarding the fires.  Defendant went to the squad car, and Hanna spoke with Clark further.  Clark asked whether she should go to the station.  Hanna "advised her that if she wanted to come down to the police station she could.  It was up to her if she wanted to come.  She could come and ride in [the] squad car if she wanted to."  In response Clark decided she would stay home.  Hanna told Clark that they would contact her when they were finished questioning defendant.  Once at the station, Hanna gave defendant the 
Miranda
 warnings and the juvenile's rights warning waiver.  After that process was complete, defendant admitted that he was with Anthony Robinson, and that Robinson had started all of the fires.  Defendant agreed to give a written statement.  Hanna and Detective Timothy Mormino typed a statement and reviewed it with defendant, who informed them that it was correct and signed the statement.  After the interview had finished, Clark telephoned the police station.

On cross-examination, Hanna admitted that he had not told defendant or defendant's mother that an infant had died as a result of one of those fires.  He stated that defendant and Clark were not given this information until defendant had finished making a statement to the police.  Clark then visited with defendant; afterwards, Hanna transported Clark back home.

Detective Mormino testified next and generally corroborated Hanna's testimony.  Howard Atlas, chair of the psychology department at the Waukegan public schools, testified regarding defendant's academic achievement.  Defendant attended regular education classes, but was referred for a case study evaluation for special education in February 1996.  

Dr. Peters discussed the results of his testing of defendant, which showed that defendant had a verbal scale intelligence quotient (IQ) of 80, performance scale of 86, and a full scale of 81.  Peters opined that defendant would have understood the 
Miranda
 warnings given to him by the detectives. 

Clark testified next.  She stated that an officer came to her house and informed her that he wished to speak with defendant "about some garbage cans being set on fire."  The officer told her that he wanted to take defendant downtown and ask him a few questions.  Clark allowed defendant to leave with the officer.  She decided it was unnecessary to accompany defendant based upon the information she had been given.  Shortly thereafter, however, she decided to go to the police station.  She telephoned the station and a squad car was dispatched to pick her up.  Once at the station, she asked to see defendant.  Defendant was brought into the room that she was in.  By this time, though, Clark had learned that an infant had died in the fire and defendant had already given a statement.

Defendant testified that Hanna wanted to ask him about some fires.  He accompanied the officers to the station.  Defendant stated that, before Hanna read the 
Miranda
 warnings and the juvenile warnings, he asked to see his mother.  He testified that he did not understand three of the warnings.  On cross-examination, defendant agreed that he told the officers that he understood the warnings, but explained that he was just frustrated.

After hearing arguments, the trial court found that the waiver was made knowingly and voluntarily, was not coerced, nor was defendant's will overborne.  The trial court denied defendant's motion to suppress. 

Defendant's jury trial commenced November 4, 1996.  Evidence adduced at trial indicated that, during the early morning hours of July 1, 1996, defendant was with his friend, Anthony Robinson.  Robinson found a gas can containing gasoline.  He told defendant he was going to set some garbage cans on fire, and defendant walked with him.  Robinson went behind a house where an Hispanic family lived and poured gas onto a city garbage can.  He then lit a match and threw it on the garbage can, which caught on fire.  Defendant and Robinson ran away. 

Robinson went to another location, a store, and pulled a garbage can close to the fence behind the store.  He then poured gas and lit a match, throwing it in the can.  Robinson set a third garbage can fire, which they then tried to extinguish at the urging of other people.  An Hispanic man came out and yelled at them.  Defendant and Robinson then went to a friend's house to sleep.

John Sherwood, a firefighter with the Waukegan fire department, testified that he responded to a residential fire in Waukegan at approximately 3 a.m. on July 1, 1996.  The house was still on fire at that time.  Sherwood stated that the fire originated in a garbage can approximately two feet from the basement door and spread to the house.  Two bedrooms were damaged by smoke and heat, but Sherwood noted that there was not a lot of charring.

Gerario Andrade testified that he lived on the second floor with his wife, their two children, and his sister.  They were awakened by a phone call from their family on the first floor telling them of a fire.  Because of the smoke and flames, they could not get to the exit and left through the second floor bedroom windows.  Gerario's sister jumped from her room and Gerario took his daughter onto the roof from their bedroom window.  The window became stuck as his wife, Marlen Albarran, tried to escape.  Gerario helped his wife get out; however, the infant was still inside.  The infant later died of smoke inhalation.

At the close of the evidence, both sides presented closing arguments.  The trial court instructed the jury.  Upon returning from its deliberations, the jury found defendant guilty of involuntary manslaughter and reckless conduct.

Defendant's counsel moved to have defendant transferred back to juvenile court for ruling and disposition because defendant was found guilty of the lesser included offenses.  The State objected.  The trial court ordered both sides to review this issue and set a future date for hearing.  At the hearing, defendant's counsel argued that, when such verdicts were rendered in automatically transferred cases, unlike defendant's, those cases were automatically transferred back to juvenile court unless the State requested a hearing.  Counsel argued that, because defendant's case was not a mandatory or automatic transfer, section 5--4(3)(a) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5--4(3)(a) (West 1996)) applied; therefore, the trial court had discretion to determine the appropriate court for defendant.  The State contended that the trial court had no discretion and that defendant should remain in adult court.

The trial court determined that section 5--4(3)(a) of the applicable statute did not provide for another hearing where one had been previously held regarding transfer or for judicial discretion on the issue.  The trial court stated:

"[T]here has already been a hearing because it [was] under the discretionary transfer provisions.  ***  [T]he [j]udge *** decided that this case should be handled in adult court and in exercising *** his discretion in this case sent the case here to be handled.

***

As a result, I will find *** defendant is to be sentenced under the adult sentencing provisions because a hearing was held which a [j]udge decided this case should be in adult court and stays in adult court under the statutory provisions of (3)(a)."

The trial court denied defendant's posttrial motion, and defendant was sentenced as an adult to 4 years' imprisonment in the Juvenile Department of Corrections.  Defendant timely appeals.

On appeal, defendant first contends 
that the trial court erred by finding that his statements on July 1, 1996, were made knowingly and voluntarily.  In support of his contention, defendant argues that he and his mother were deceived by Officers Hanna and Mormino into believing that defendant would be questioned about garbage can fires, "a minor offense."  Defendant admits that his mother initially decided not to accompany him to the station, but that this notice to the parent should be insufficient due to the officers' omission of the crucial fact that an infant had perished in the fire. 

A reviewing court will not disturb a trial court's finding denying a motion to suppress an incriminating statement made by a defendant unless its finding is contrary to the manifest weight of the evidence.  
In re J.J.C.
, 294 Ill. App. 3d 227, 235 (1998). Persons subjected to custodial police interrogation regarding matters that might tend to incriminate them are entitled to the procedural safeguards outlined in 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).  These rights may be waived, if the waiver is made knowingly and intelligently.  
Miranda
, 384 U.S. at 475, 16 L. Ed. 2d at 724, 86 S. Ct. at 1628.  Juvenile defendants are also protected by the 
Miranda
 safeguards, and the State bears the burden to show by a preponderance of the evidence that a confession was given knowingly and intelligently.  
J.J.C.
, 294 Ill. App. 3d at 234. 

This court looks at the " 'totality of the circumstances' " in determining whether a statement has been voluntarily given. 
 J.J.C.
, 294 Ill. App. 3d at 234, quoting 
People v. Oaks
, 169 Ill. 2d 409, 451 (1996).  In determining voluntariness, the test is whether the incriminating statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time of the confession.   
In re L.L.
, 295 Ill. App. 3d 594, 600 (1998); see also 
People v. Miller
, 173 Ill. 2d 167, 181 (1996).  Many factors are considered, including the age, education, intelligence, and emotional characteristics of the accused; the duration of questioning; whether the accused was informed of his constitutional rights or was subjected to any physical punishment; previous experience with the criminal justice system; and whether the confession was induced by police deception. 
L.L.
, 295 Ill. App. 3d at 600.  Where juveniles are concerned, additional factors must be considered, including the time of day and the presence of a parent or other adult concerned about the juvenile's welfare. 
L.L.
, 295 Ill. App. 3d at 600.  The determination of voluntariness does not rest on one factor alone; the question must be answered based on the circumstances of each case. 
L.L.
, 295 Ill. App. 3d at 600, citing 
J.J.C.
, 294 Ill. App. 3d at 238.

The gravamen of defendant's argument that his statement was involuntarily given is that the statement was obtained through police deception.  The act of deception, or subterfuge, occurred when the police withheld the fact that an infant had died in one of the fires for which defendant was being questioned.  Initially, we note that defendant was under no compulsion to accompany the officers and was free to leave the station prior to making his incriminating statements.  Defendant and his mother were both aware that the officers were going to question defendant regarding garbage can fires.  Indeed, the officers did question defendant regarding the garbage can fires.  The issue then becomes to what extent must officers inform parties of the nature of their desired questioning, or, more specifically as it relates to this case, whether the officers had a duty to inform defendant and his mother that the questioning could encompass a fatality resulting from one of the garbage can fires.

We acknowledge that the record supports an argument that the officers' conduct could be construed as subterfuge by their act of withholding information on the exact nature of the police questioning when seeking both Clark's permission and defendant's agreement to accompany the officers to the station.  See 
People v. Torres
, 283 Ill. App. 3d 281, 289 (1996), citing 
People v. Arias
, 179 Ill. App. 3d 890, 896-97 (1989).  However, the officers' act does not invalidate defendant's consent to accompany the officers to the station.  Furthermore, we believe this act is insufficient to render defendant's statement involuntary.  Reviewing courts have both condoned and condemned the act of police subterfuge while conducting a criminal investigation involving a juvenile suspect.  See 
Arias
, 179 Ill. App. 3d at 896-97; 
People v. Bridges
, 198 Ill. App. 3d 534, 538-39 (1990).  Undeniably, though, criminal suspects do not have the right to be informed of the specific criminal offense or potential criminal offenses for which they may be charged when questioned by the police.  
Torres
, 283 Ill. App. 3d at 290, citing 
People v. Prude
, 66 Ill. 2d 470, 475-76 (1977).

In the present case, we find that the officers were under no affirmative obligation to disclose the entire scope of their investigation to defendant and his mother.  Officer Hanna specifically and unequivocally told defendant and his mother that he wished to question defendant regarding some garbage can fires. Defendant agreed to go to the station with Hanna and Mormino. Defendant's mother declined to accompany her son to the station.

The trial court gave detailed findings regarding the voluntariness of defendant's statement.  It discussed applicable case law; defendant's testimony; the officers' testimony; defendant's ability to read without hesitation; his age; his mental functioning; his ability to express himself; his prior contact with police; the duration of the interview; the presence of a juvenile officer; and the officers' conduct in withholding the information on the fatality.  Based on the facts and circumstances presented, we find that the evidence clearly demonstrates that the trial court's finding was not against the manifest weight of the evidence.

Defendant's second issue on appeal is whether the trial court abused its discretion in transferring his case to the criminal court for prosecution as an adult.  Defendant asserts that he should not have been transferred in light of the statutory factors and the abundance of testimony concerning his favorable response to treatment.

Section 5--4(3)(a) of the Act permits the prosecution of a minor 13 years of age or over under the criminal laws for any offense if, upon the motion of the State's Attorney, a juvenile court judge finds that it is not in the best interests of the minor or of the public to proceed under the Act.  705 ILCS 405/5--4(3)(a) (West 1996); 
People v. Fuller
, 292 Ill. App. 3d 651, 657 (1997).  The State bears the burden of presenting sufficient evidence to persuade the juvenile court to grant the motion to transfer.  
Fuller
, 292 Ill. App. 3d at 657, citing 
People v. Taylor
, 76 Ill. 2d 289, 304 (1979).  Our standard of review on a trial court's ruling on a motion to transfer pursuant to section 5--4(3)(a) is whether the juvenile court abused its discretion.  
In re L.J.
, 274 Ill. App. 3d 977, 979 (1995).

Section 5--4(3)(b) of the Act (705 ILCS 405/5--4(3)(b) (West 1996)) lists eight factors that a juvenile court must consider, among other matters, in determining whether to grant or deny a motion to transfer.  
Fuller
, 292 Ill. App. 3d at 657.  The factors include: 

"(i) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (ii) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (iii) the age of the minor; (iv) the previous history of the minor; (v) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; (vi) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority; (vii) whether the minor possessed a deadly weapon when committing the alleged offense; and (viii) whether the alleged offense is a felony offense under Section 5 of the Cannabis Control Act committed while in a school ***[.]"  705 ILCS 405/5--4(3)(b) (West 1996).

No single factor is dispositive, and equal weight need not be given to each factor.  
Fuller
, 292 Ill. App. 3d at 657.  All factors need not be resolved against the juvenile for a trial court to find that such a transfer is warranted.  
People v. Cooks
, 271 Ill. App. 3d 25, 39 (1995).  Finally, our function is not to reweigh all of the factors, but to determine whether an abuse of the trial court's discretion occurred.  
Fuller
, 292 Ill. App. 3d at 659. 

At the transfer hearing in the present case the juvenile court considered the number of fires that were set, all of which involved the presence of defendant and his knowledge; his continued contact with the other offender after the commission of the crime; his flight from the scene; his failure to report the incident; and his failure to warn any party who might suffer as a result of the fires.  The juvenile court also considered the statutory factors, noting that sufficient evidence existed such that a grand jury would be expected to return an indictment and defendant's implicit knowledge as well as his indifference to the possible consequences of starting fires and the categorization of starting fires in close proximity to a residence being an aggressive act.  The juvenile court also considered defendant's age, 14 at the time the offenses were committed.  Although defendant highlights the fact that he was only 14 at the time the offenses occurred, we note that he  was barely six weeks shy of his 15th birthday when he committed the crimes charged, which would have garnered an automatic transfer.  See 705 ILCS 405/5--4(6)(a) (West 1996).  The juvenile court noted defendant had no previous involvement with juvenile detention or criminal activity.  

The next factor the court discussed was the facilities available to defendant for treatment and rehabilitation.  Defendant was referred to treatment at a number of facilities; however, all but one rejected defendant for reasons concerning defendant's "fire starting behavior."  The only facility that accepted defendant, the court noted, was not a realistic option in that it was an insecure setting, was not immediately available, and had no treatment program in effect at that time.  In addressing this factor we note that if defendant was transferred to the adult criminal court for prosecution and later convicted and sentenced to imprisonment, he may still be confined in the juvenile division of the Department of Corrections.  See 730 ILCS 5/5--8--6(c) (West 1996) (providing that "[a]ll offenders under 17 years of age when sentenced to imprisonment shall be committed to the Juvenile Division of the Department of Corrections *** and such sentence shall apply whenever the offender sentenced is in the control and custody of the Adult Division of the Department of Corrections").  Therefore, the facilities available to benefit defendant may be the same while he remains a minor whether he is adjudged a delinquent in the juvenile court or found guilty of first degree murder in the adult criminal court.

Regarding the best interest of defendant and the security of the public, the juvenile court offered a favorable response to defendant's progress since he was detained.  Lastly, the juvenile court found that gasoline and matches were not 
per se
 deadly weapons, but rather, from a practical standpoint they could lead to deadly results.  The eighth factor was not applicable.  The court noted its difficulty in making a decision, but concluded "both for the security of the public and safety of the minor *** there [was] a probable necessity of detention or supervision beyond minority."  The trial court ordered defendant's case transferred to criminal court.

In light of the juvenile court's findings in relation to the statutory factors and other evidence presented, we determine that the record presents sufficient evidence to support the juvenile court's order transferring defendant's case.  Accordingly, we determine that the juvenile court did not abuse its discretion in granting the State's motion to transfer.

Defendant's final issue is whether the trial court erred in denying his motion to transfer his case back to juvenile court for purposes of sentencing.  Prior to trial, the trial court conducted a hearing pursuant to section 5--4(3)(a) and determined that defendant should be prosecuted as an adult.  Parenthetically, we note that the trial court's order allowing defendant to be tried as an adult was not a final and appealable order and, as such, was subject to reconsideration by the trial court.  See 155 Ill. 2d R. 304(a). He was tried for first-degree murder and aggravated arson. He was, however, convicted of involuntary manslaughter and reckless conduct.  Subsequent to the conviction, defendant moved the trial court to transfer his case back to juvenile court for sentencing.  The trial court denied defendant's motion. 

Defendant focuses upon the fact that he was only 14 at the time the offense was committed and therefore, not subject to the automatic transfer provisions contained in section 5--4.  If defendant was 15, he would have been automatically transferred to adult court, and upon his conviction of a lesser included offense, he would have been automatically transferred back to juvenile court.  See 705 ILCS 405/5--4(6)(a), (6)(c)(ii) (West 1996).  Defendant maintains that the trial court erred in determining that it had no discretion to return defendant to juvenile court for sentencing or to hold another transfer hearing on the matter.  Alternatively, defendant contends that the transfer provisions of the Act violate his constitutional rights of due process and equal protection of the laws.  See Ill. Const. 1970, art. I, §2.

In our resolution of this issue, we need not reach the constitutional questions.  See generally 
People v. DePalma
, 256 Ill. App. 3d 206 (1994).  For the reasons that follow, we find that the trial court abused its discretion and accordingly, vacate and remand on this issue.

Initially, we note that section 5--4 is not limited to the transfer and transfer back of juvenile offenders.  Rather, as stated in the heading, the statute relates to all criminal 
prosecutions
 of individuals under 17 years of age.  Once convicted, the trial court enters judgment on the verdict pursuant to section 2--5 of the Criminal Code of 1961 (720 ILCS 5/2--5 (West 1996)).  

We do, however, acknowledge that no explicit provision exists for those juvenile offenders transferred pursuant to section 5--4 (3)(a) to be automatically transferred back to the juvenile justice system upon conviction of a lesser included offense.  Although such a provision would be helpful and consistent with the other transfer provisions enunciated in section 5--4 of the Act, we believe that its absence is not fatal to our disposition of this issue.  After all, " 'classification by age is not a new concept and has been held to be a permissible distinction.' "  
People v. Williamson
, 131 Ill. App. 3d 321, 323 (1985), quoting 
People v. J.S.
, 103 Ill. 2d 395, 403 (1984).

We believe that a trial court is not precluded from using its discretion on cases in which the automatic transfer provisions do not apply.  In examining statutes, we have found it instructive to consider relevant statements by legislators concerning the proposed legislation.  See 
People v. Rasmussen
, 233 Ill. App. 3d 352, 363 (1992), citing 
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548, 555 (1992).  In amending the statute to include the automatic transfer provisions, the legislature provided insight as to the interpretation of the statute.  The legislative debates indicate that the proposed transfer provisions were not meant to restrict, but enhance judicial discretion.  Rather than having all cases which were originally transferred to adult court via judicial discretion automatically sent back to juvenile court upon acquittal or conviction of a lesser included offense, the legislature indicated through this amendment that it wished to authorize the judiciary the discretion to keep those offenders aged 15 and 16 in the adult criminal court for sentencing.  At the time of the hearings, Representative Saviano explained that, without the automatic transfer provisions, "if a minor is charged with first-

degree murder [and] *** found guilty of second-degree murder *** he slides back to the juvenile courts and is sentenced under those guidelines."  88th Ill. Gen. Assem., House Proceedings, April 20, 1993, at 142.  Representative Saviano also agreed with Representative Homer's interpretation:

"[T]hat where there's been an automatic transfer 
or a transfer
 of a prosecution of a case from juvenile to adult court, that *** where there's a finding of 'not guilty' or an acquittal on the underlying offense that gave rise to the transfer that the court then 
may
 sentence the person as an adult on the lesser charges[.]"  88th Ill. Gen. Assem., House Proceedings, April 20, 1993, at 140-41.

Moreover, by way of analogy, section 6--1 of the Criminal Code of 1961 (720 ILCS 5/6--1 (West 1996)) states that "[n]o person shall be convicted of any offense unless he had attained his 13th birthday at the time the offense was committed."  720 ILCS 5/6--1 (West 1996).  This statute does not mean that any individual under the age of 13 has the unfettered ability to commit crimes and not be subject to any consequences.  This statute also does not prohibit or preclude a trial court from exercising its discretion to continue a case until the juvenile offender turns 13 for a dispositional hearing.  See 
People v. Griffin
, 92 Ill. 2d 48 (1982) (holding that, even though the defendant was 12 at the time of offense, it was permissible for the trial court to continue the case for a dispositional hearing until the juvenile offender was 13 to enable the juvenile to be committed to the Juvenile Department of Corrections).

Therefore, the State may present a motion, either at the time of conviction or any time prior to sentencing, calling for the retention of the minor in the jurisdiction of the adult criminal court.  Similarly, the minor may present a motion requesting a transfer back to the jurisdiction of the juvenile court.  By doing so, the trial court may find that the juvenile offender should be transferred back to the juvenile justice system for the purpose of sentencing under Chapter V of the Unified Code of Corrections or retained in the adult court for sentencing under the criminal laws of the State.   
Cf.
 
Griffin
, 92 Ill. 2d 48.  Alternatively, the trial court may, on its own, enter a finding of jurisdiction at the time of conviction.  By allowing the trial court discretion to determine whether to transfer the juvenile back to juvenile court, the trial court is afforded the opportunity to balance the interests of the community and the minor in reaching a sentencing determination, just as it had an opportunity to balance the interests in reaching a prosecutorial determination.  Further, the trial court should use the same guidelines provided in section 5--

4(3)(b) in reaching a decision on whether to transfer the juvenile.  
Cf.
 
In re D.T.
, 141 Ill. App. 3d 1036 (1986).

In the present case, the trial court determined that, because the statute did not provide either for another hearing or for judicial discretion on the issue, it had no choice but to sentence defendant as an adult after he was convicted of the lesser included offenses.  We find that, by failing to exercise any discretion, the trial court abused its discretion in determining whether to transfer defendant back to the juvenile justice system for purposes of sentencing.  Therefore, we vacate the order of the trial court and remand for a determination as to whether defendant should be transferred back to the juvenile court or retained in the adult court system for purposes of sentencing.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part, vacated in part, and remanded  for further proceedings consistent with this opinion.

Affirmed in part, vacated in part and remanded.

McLAREN and THOMAS, JJ., concur.