**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200471-U

Order filed June 15, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0471 Circuit No. 19-CF-665 |
| | ) | |
| DAMERIO J. MOYE, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Hauptman and Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The court erred in suppressing all statements defendant made to law enforcement officials but did not err in suppressing the statements defendant made after he invoked his right to counsel.

¶ 2    The State appeals the Kankakee County circuit court's order suppressing statements made by defendant, Damerio J. Moye. The State argues that defendant knowingly and voluntarily waived his *Miranda* rights and that after defendant invoked his right to counsel, he

reinitiated the conversation with the law enforcement officials. We affirm in part, reverse in part, and remand.

¶ 3                                     I. BACKGROUND

¶ 4        The State charged defendant with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2016)) in relation to the 2017 death of Terrance Jackson. Defendant filed a motion to suppress statements he made during an interview with law enforcement officials after he requested an attorney. During the proceedings on the motion, the court raised an issue with whether the initial *Miranda* warnings were meaningful, and defendant ultimately argued that in addition to suppressing the statements given after he requested an attorney, all statements prior to that point should be suppressed because he did not knowingly and intelligently waive his *Miranda* rights.

¶ 5        During the various hearings on the motion, the following information was presented through testimony and the audio and video recording of the interview. Detective Logan Andersen and Alcohol, Tobacco, Firearms and Explosives agent Dave Gomez interviewed defendant. At that time, defendant was in custody for a firearm offense. Defendant had originally contacted Andersen to provide information regarding firearms with the hope of improving the outcome of his firearm charge. Andersen's intention in interviewing defendant was to obtain information regarding the murder of Jackson. Andersen did not inform defendant that he was a suspect in Jackson's murder or that Andersen was going to interview him about his involvement in Jackson's murder. Defendant had numerous prior contacts with law enforcement where he was the subject of criminal investigations and/or questioned by officers.

¶ 6        The recording shows that at the beginning of the interview, Andersen tells defendant that for integrity purposes they need to record the interview and that because they were going to be

2

talking about "illegal shit" he needed to read defendant his *Miranda* rights. Andersen stated that defendant was there to help them. After Andersen reads the *Miranda* rights, including the right to an attorney, he asks if defendant understands them. Defendant asks, "I'm being charged with something or some shit?" Andersen responds, "No, *** but we're talking about illegal things." Defendant says, "Oh, ok, ok" and initials and signs the *Miranda* rights form. Defendant then talks to Andersen and Gomez for over an hour. Sometime after Jackson's murder is brought up, defendant states, "I don't got shit to say *** without a lawyer being present though" and "I don't got shit to say about that without a lawyer being present." Andersen initially responds by saying "ok." Andersen begins standing up to pack his things and says "all right, I guess that will be it for you, unfortunately for you" and defendant says, "is that what you came down here for?" Andersen, while continuing to gather his things, tells defendant he was not being cooperative, and he asked for a lawyer. Defendant replies, "Aight bro, what's up bro." Andersen tells defendant "[n]ow, unfortunately we only have one side of the story," we have "provable lies," and defendant looks "like a cold-blooded killer." Defendant then agrees to talk and, after being Mirandized again, provides incriminating statements. Andersen testified it was his intent to leave after defendant invoked his right to counsel.

¶ 7     The circuit court found that the *Miranda* warnings were not "meaningful" largely because defendant thought he was there to talk about cooperating in a firearms investigation, but Andersen's intent was to question him regarding the murder. Based on this finding, the court determined that "in essence" defendant was not given his *Miranda* warnings. The court also found that defendant's statements were voluntary, and his will was not overborne. It suppressed defendant's initial statements, prior to invoking his right to counsel, on the basis that defendant was not properly Mirandized. The court then found that defendant's request for a lawyer was not

3

scrupulously honored because "[t]here was this ongoing conversation in which really the defendant was kind of baited into maintaining contact with the police." The court suppressed all of defendant's statements after he requested the lawyer.

¶ 8    After the ruling on the motion to suppress, the State filed a certificate of impairment pursuant to Illinois Supreme Court Rule 604 (eff. July 1, 2017) and a notice of appeal.

¶ 9                                    II. ANALYSIS

¶ 10                              A. Initial *Miranda* Waiver

¶ 11    The State argues that defendant's initial *Miranda* waiver was knowingly, intelligently, and voluntarily made such that the court erred in suppressing the statements defendant made following that waiver and prior to his request for a lawyer. Defendant argues that the court's finding that the *Miranda* warnings were not "meaningful" is not against the manifest weight of the evidence such that the suppression should be affirmed.

¶ 12    Regarding a motion to suppress, this court will reverse a circuit court's factual findings if they are against the manifest weight of the evidence, but we review *de novo* the legal question of whether suppression is warranted. *People v. Braggs*, 209 Ill. 2d 492, 505 (2003).

¶ 13    A waiver of one's *Miranda* rights is valid if it is voluntarily, knowingly, and intelligently made. *Id.* at 514-15. "A criminal suspect is not required to know and understand every possible consequence of a waiver of the Fifth Amendment privilege for it to be knowingly and intelligently made." *Id.* at 515. "To waive rights intelligently and knowingly, one must at least understand basically what those rights encompass and minimally what their waiver will entail." *In re W.C.*, 167 Ill. 2d 307, 328 (1995). The determination of whether a defendant intelligently waived his rights depends on the facts and circumstances of each case, "including the defendant's background, experience, and conduct." *Id.*

4

¶ 14　　　　Here, defendant was read his *Miranda* rights, and he waived those rights. There was no indication and no argument that the recitation of the rights was deficient in any manner. Further, there was no indication in the record or argument that defendant was incapable of understanding those rights or what their waiver would entail. Additionally, defendant had numerous prior police interactions, including being questioned by police. Moreover, during the course of the interview defendant invoked his right to counsel, indicating he understood those rights. Based on these facts, there is no indication that defendant did not understand what his rights were or what their waiver would entail. Therefore, defendant's *Miranda* waiver was knowing and intelligent.

¶ 15　　　　Still, the circuit court found that the *Miranda* warnings were not "meaningful" because defendant was under a misapprehension about the subject of his interview with Andersen. This is not the proper standard to evaluate a *Miranda* waiver. However, assuming that the court meant that defendant's *Miranda* waiver was not knowingly and voluntarily made because of the misapprehension, this was not a proper consideration because whether defendant knew the subjects of questioning in advance of the interview is irrelevant to the determination of whether a *Miranda* waiver is knowing and intelligent. See *Colorado v. Spring*, 479 U.S. 564, 577 (1987) ("Accordingly, we hold that a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege."); see also *People v. Brown*, 301 Ill. App. 3d 995, 1003 (1998) (providing that "criminal suspects do not have the right to be informed of the specific criminal offense or potential criminal offenses for which they may be charged when questioned by the police"). The fact that Andersen and Gomez did not inform defendant they intended to talk to him about the murder does not render his otherwise knowing and intelligent waiver invalid, or his statements involuntary. See, *e.g.*, *People v. Hicks*, 132 Ill.

2d 488, 495 (1989) (finding that defendant's *Miranda* waiver was valid where he waived it in regard to one crime but was also questioned regarding another crime and stating that "[t]he fact that the topic of conversation shifted to another crime after defendant's waiver of his rights does not render his confession involuntary"); *Brown*, 301 Ill. App. 3d at 1002 (acknowledging the officers' conduct could be construed as subterfuge by withholding information on the nature of the police questioning when seeking consent but determining "the officers' act does not invalidate defendant's consent"); *People v. Melock*, 149 Ill. 2d 423, 450 (1992) ("The fact that a confession was procured by deception or subterfuge does not invalidate the confession as a matter of law."). As the Supreme Court stated in *Spring*, 479 U.S. at 577, "the additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature." We conclude that the court's suppression of defendant's statements prior to the invocation of his right to counsel based upon the finding the *Miranda* warnings were not meaningful due to the fact defendant was unaware he would be questioned about the murder, was contrary to the law and against the manifest weight of the evidence.

¶ 16                    B. Invocation of the Right to Counsel

¶ 17        The State argues that the court erred in finding that Andersen did not honor defendant's invocation of his right to counsel where, following defendant's request for counsel, Andersen ceased his interrogation and defendant reinitiated the conversation before he again waived his right to counsel.

¶ 18        When a suspect invokes his right to counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). "[A]ny waiver of the right to counsel given by a suspect in a further

6

discussion initiated by the police is presumed to be invalid, and statements obtained pursuant to such a waiver are inadmissible in the prosecution's case in chief." *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 41. The purpose of this precedent is "to prevent the police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Id.* To determine whether statements given after a defendant has invoked his right to counsel are admissible, we first determine whether the police or the accused initiated further discussion. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983); see also *People v. Winsett*, 153 Ill. 2d 335, 350 (1992) (noting that the Supreme Court has determined that the State must establish the defendant "initiated further discussions with the police" in order to use statements defendant made after invoking the right to counsel). "This entails determining from whence the impetus for the additional discussion came: if from the police, then *Edwards* bars the admissibility of statements made in response to the further interrogation." *People v. Mandoline*, 2017 IL App (2d) 150511, ¶ 103.

¶ 19        Here, the trial court found, and the record supports the finding, that the police did not scrupulously honor defendant's request for counsel. Specifically, after defendant invoked his right to counsel, Andersen did not cease discussions with defendant. Although he stated "ok" and began standing up, indicating he was going to stop the interrogation, he did not do so at that point, and instead he continued or reinitiated the discussion with defendant by telling defendant that was it for him and it was unfortunate for defendant. Looking at these statements objectively, regardless of Andersen's testimony to the contrary, they were reasonably likely to evoke a response from defendant or keep defendant talking and were the impetus for further discussions. See *People v. Kadow*, 2021 IL App (4th) 190103, ¶ 27. ("[O]nce a suspect unambiguously invokes his right to counsel, the police are not entitled to make statements designed to pressure defendant to retract his request for counsel—they are required to cease the interrogation until

7

defendant's attorney is present."); see also *e.g. People v. Baker*, 253 Ill. App. 3d 15, 33-34 (1993) (noting that the focus of *Edwards* " 'was on the state of mind of the suspect, rather than the police' " and that in that matter, the officers' intent did "not escape the scope of the bright-line rule in *Edwards*") (quoting *People v. Young*, 153 Ill. 2d 383, 399 (1992)). Andersen's statements had their apparently intended effect of immediately eliciting a response from defendant, which led to defendant's decision to waive his right to counsel. Because Andersen reinitiated the discussion with defendant, the statements defendant made thereafter are inadmissible in the State's case-in-chief and were properly suppressed.

¶ 20                                III. CONCLUSION

¶ 21        The judgment of the circuit court of Kankakee County is affirmed in part, reversed in part, and remanded.[1]

¶ 22        Affirmed in part, reversed in part, and remanded.

---

[1]Defendant raised a third argument that suppression was warranted because he invoked his right to remain silent prior to invoking his right to counsel such that all statements made thereafter should be suppressed. Defendant did not raise this issue in the circuit court, and we decline to address it as it should be considered by the circuit court in the first instance.